UNITED STATES DISTRICT COURT                    EASTERN DISTRICT OF TEXAS

CINCO BAYOUS, LLC, JIM WINGATE,       §
TANYA WINGATE, and                    §
WILLIAM WINGATE,                      §
                                      §
          Plaintiffs,                 §
                                      §
*versus*                              §       CIVIL ACTION NO. 1:19-CV-452
                                      §
SAMSON EXPLORATION, LLC,              §
                                      §
          Defendant.                  §

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiffs Cinco Bayous, LLC, Jim Wingate, Tanya Wingate,

and William Wingate's (collectively, "Plaintiffs") Motion to Overrule Objections and Motion to

Compel Responses to Requests for Production (#15).  Defendant Samson Exploration, LLC

("Samson") filed a response in opposition (#18).  Having reviewed the pending motion, the

submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that

Plaintiffs' motion should be DENIED.

I.      Background

On March 25, 2020, Plaintiffs served Samson with their First Requests for Production,

wherein Plaintiffs defined information as:

> "Information" for the purpose of [the] requests for production means seismic or
> other geophysical data (collectively "data") which was acquired, accumulated,
> sought, and/or gathered, from leased premises as depicted on Exhibit "B" to the
> Lease.

On January 6, 2020, Samson served Plaintiffs its Initial Disclosures, which listed six lease

agreements executed in August 2012, identified by their respective "Memorandum Oil, Gas, and

Other Hydrocarbon Leases" ("2012 Leases") numbers.  The 2012 Leases Memoranda are stamped with the following identification numbers and their respective primary term: 2012031984 (1 year), 2012031987 (1 year), 2012031985 (2 year), 2012031988 (2 year), 2012031986 (2 year), 2012031989 (2 year).  The 2012 Leases remained in effect until August 2013 and August 2014, respectively.  Prior to Samson's initial disclosure of the 2012 Leases, nothing in the record identified the contracts being sued upon; however, Plaintiffs now concede that the 2012 Leases are the basis of the instant litigation.  The parties also agree that Samson did not collect any data pursuant to the 2012 Leases.  Upon receipt of Plaintiffs' Requests for Production, Samson requested that Plaintiffs specifically define the terms "lease" and "leased premises," as referenced by Plaintiffs in said document.  Upon Samson's request for clarification, on April 9, 2020, Plaintiffs specified that the terms "lease" and "leased premises" are defined according to the language in the 2012 Leases.

On May 1, 2020, Samson submitted its responses to Plaintiffs' First Requests for Production and objected to all of Plaintiffs' requests.  Samson maintains, as a general objection, that Plaintiffs are using the discovery process to obtain documents and information that Samson was not contractually required to provide to Plaintiffs.  Samson also contends that the information sought by Plaintiffs is considered a trade secret and, thus, protected from discovery.  Samson further contends that "Plaintiffs wrongfully [take] the position that [Samson] must provide seismic and other geophysical data collected by [Samson] pursuant to agreements not at issue," specifically, the 2008 Seismic Data.[1]  Samson also contends that Plaintiffs' requests are overly

---

[1] The information in dispute is part of a large seismic survey, the Willow Marsh Survey, conducted in 2008, consisting of 215 square miles.  The leased premises comprised less than one percent of the entire survey.

broad because the information they seek was collected prior to the 2012 Leases and are not "limited by the time period associated with the terms of the [2012 Leases]." Samson individually addressed each request in its response. On May 14, 2020, Plaintiffs' counsel sent a follow-up letter regarding Samson's objections. Subsequently, Plaintiffs' and Samson's counsel scheduled a telephonic conference to discuss Samson's discovery objections; however, the parties could not resolve the discovery dispute. On May 20, 2020, Samson filed its Motion for Summary Judgment (#12). On May 22, 2020, Plaintiffs filed their First Motion to Continue Submission Deadline for Defendant's Motion for Summary Judgment (#14), wherein Plaintiffs maintained they had been stifled in the discovery process. On May 27, 2020, Plaintiffs filed the instant motion. On June 2, 2020, the court denied Samson's Motion for Summary Judgment as premature (#17), thus reinforcing the agreed upon deadlines set forth in the Scheduling Order (#7).

In the instant motion, Plaintiffs request a ruling on requests: 1, 2, 3, 4, 5, 6, 7, and 18. Those requests seek the following information:

1. Please produce any and all documents relating or pertaining to Information, and any value allocated to same for the purposes of taxes, general accounting, sale, and/or transfer.

2. Please produce any and all documents relating or pertaining to interpretations of the Information, and any monetary value allocated to same, including but not limited to documents generated for the purposes of taxes, general accounting, sale, and/or transfer.

3. Please produce any and all documents relating or pertaining to the sale, transfer, and/or disposition of the Information.

4. Please produce any and all documents relating or pertaining to anomalies identified on the Leased Premises.

5. Please produce any and all documents relating or pertaining to the sale, transfer, and/or disposition of [any of the] interpretations made from use of the Information.

3

6.  Please produce any and all document[s] related to the depreciation and/or valuation of the Information.

7.  Please produce any and all classification, allocations, and/or interpretations of the Information.

18.  Please produce all documents reflecting or pertaining to any emails, or other internal memoranda regarding the use, retention, sale, and/or transfer of the Information.

Plaintiffs contend that Samson is not complying with the Federal Rules of Civil Procedure because Samson's objections are boilerplate and generic.  Plaintiffs further contend that the definition of "Information" should not be limited to the time period associated with the terms of the 2012 Leases because the information contained within the 2008 Seismic Survey is a "central part" of proving the elements of fraudulent inducement.  Plaintiffs also assert that the information contained within the 2008 Seismic Survey is relevant to establishing damages.  Samson urges the court to sustain its objections, maintaining that Plaintiffs' claims are time-barred, that granting Plaintiffs' Motion to Compel deprives Samson of its valid defenses, and that Plaintiffs seek confidential and trade secret information beyond the plain terms of the 2012 Leases.

II.   Analysis

A.    Discovery—Scope

Pursuant to Federal Rule of Civil Procedure 26(b)(1):

Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "[D]iscovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil cases." *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *accord Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 83 (E.D. Tex. 2019).  District courts have broad discretion to determine the scope of discovery. *See Cruz v. Maverick Cty.*, 957 F.3d 563, 570 (5th Cir. 2020); *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 872 (5th Cir. 2018); *Shumpert v. City of Tupelo*, 905 F.3d 310, 326 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1211 (2019).  At the discovery stage, relevancy is broadly construed, and information is considered relevant if it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *accord Camoco, LLC v. Leyva*, No. 333 F.R.D. 603, 606 (W.D. Tex. 2019); *but see Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 319064, at *4 n.4 (E.D. Tex. Jan. 23, 2017) (noting that "Rule 26 was amended to delete from the definition of relevance information that appears 'reasonably calculated to lead to the discovery of admissible evidence' because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery' and 'has continued to create problems' given its ability to 'swallow any other limitation on the scope of discovery.'" (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment)).

In order for information to be discoverable, it "must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quoting *Samsung Elecs. Am., Inc. v. Chung Yang Kun*, 321 F.R.D. 250, 279 (N.D. Tex. 2017)); *see Gilby v. Hughes*, No.

1:19-CV-01063-LY, 2020 WL 3958479, at *1 (W.D. Tex. July 10, 2020) (citing FED. R. CIV. P. 26(b)(1)). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Zenith Ins. Co.*, 328 F.R.D. at 161 (quoting *Samsung Elecs. Am., Inc.*, 321 F.R.D. at 280). The party resisting discovery has the burden to show specifically how each discovery request at issue is not relevant or is overly broad, unduly burdensome, or oppressive. *English v. Tex. Farm Bureau Bus. Corp.*, No. 617CV00323-ADA-JCM, 2020 WL 2764625, at *1 (W.D. Tex. May 27, 2020); *Samsung Elecs. Am., Inc.*, 321 F.R.D. at 284 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Moreover, "[t]he burden is on the party resisting discovery to establish the discovery is not proportional." *Hall v. Rent-A-Center, Inc.*, Civ. A. No. 4:16cv978, 2018 WL 4293141, at *3 (E.D. Tex. Aug. 31, 2018).

"Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). A party may submit a motion to compel disclosure of discovery if "the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Nevertheless, district courts have broad discretion in all discovery matters and should not "hesitate to exercise appropriate control over the discovery process." *Herbert*, 441 U.S. at 177; *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.), *cert. denied sub nom. Kelly v. Al Furat Petroleum Co.*, 531 U.S. 979 (2000); *accord Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d

597, 603 (5th Cir. 2018) (recognizing that district courts have broad discretion on discovery issues).

      B.     <u>Discovery—Objections</u>

      General, boilerplate, and unsupported objections to discovery requests that fail to state their grounds with specificity are improper and result in waiver of those objections. *See* FED. R. CIV. P. 26(b)(1), advisory committee note (2015) (Rule 26 does not "permit the opposing party to refuse discovery simply by making a boilerplate objection that is not proportional"); *McLeod*, 894 F.2d at 1485 (finding boilerplate objections that interrogatories were "overly broad, burdensome, and oppressive" were "not adequate to voice a successful objection" and thus not valid); *Star Creek Ctr., LLC v. Seneca Ins. Co., Inc.*, No. 4:17-CV-00607, 2018 WL 1934084, at *3 (E.D. Tex. Apr. 23, 2018) (holding plaintiff "waived several objections by making boilerplate . . . objections"); *Heller v. City of Dallas*, 303 F.R.D. 466, 483-84 (N.D. Tex. 2014) ("So-called boilerplate or unsupported objections . . . are likewise improper and ineffective and may [amount to] what the Fifth Circuit has described as . . . Rambo tactics . . . ."); *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159, 164-66 (S.D. Tex. 2009) (finding that boilerplate objections fail "to meet the specificity requirements" of Rule 34 or Rule 26). Objections that are untimely or lack specificity are "waived unless the court, for good cause, excepts the failure." FED. R. CIV. P. 33(b)(4); *see Enron Corp. Sav. Plan*, 258 F.R.D. at 153, n.1 (applying Rule 33 requirements to both interrogatory and document request objections).

      In terms of the substance of discovery, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). If a party objects to an interrogatory, that objection "must be stated with specificity." FED. R.

Civ. P. 33(b)(4).  Additionally, requests for documents must describe with particularity each item

to be inspected, and objections to requests must be specific and state if any documents "are being

withheld on the basis of that objection."  Fed. Rs. Civ. P. 34(b)(1)(A), 34(b)(2)(B), (C).  If a

party fails to answer an interrogatory or to produce a document in compliance with these

guidelines, the other party may move to compel an answer, designation, or production.  Fed. R.

Civ. P. 37(a)(3)(B)(iii-iv).

III.    Samson's Objections

        The court will not address Plaintiffs' requests for production individually because the

primary focus of each request propounded by Plaintiffs concerns "Information."  Moreover,

Samson, as the party resisting discovery, incorporates the same analysis for each objection.  Thus,

the court will address the objections, as set forth by Samson.

        Samson objections to requests 1, 2, 3, 4, 5, 6, 7, and 18, as vague, overly broad as to

time, scope, geography, and unduly burdensome.  Samson asserts that the 2012 Leases' terms

provide that Samson was to furnish seismic and geophysical data collected by Samson during the

term of the leases.  Samson further asserts that the requests are inherently overly broad because

Plaintiffs seek "Information" from Samson that was collected prior to the 2012 Leases being

executed with Plaintiffs.  Additionally, Samson maintains that the definition of "Information" is

not limited by the time period associated with the terms of the 2012 Leases.

        Samson also objects to the requests because the reference to "any and all documents

relating or pertaining to" is not reasonably specific to identify a particular document or category

of documents.  Samson further objects on the basis that the information is irrelevant and not likely

to lead to the discovery of admissible evidence.  Samson maintains that the requests seek

8

confidential trade secret information and Samson no longer owns the information.  Also, Samson

contends that such information is protected by the attorney-client and/or work product privilege.

Samson further asserts that it does not have any responsive documents relative to value allocated

to the Information on the property described in the 2012 Leases.

Although "discovery rules are to be accorded a broad and liberal treatment," it is

undisputed that Samson did not collect seismic data or "Information" from Plaintiffs' property

during the 2012 Leases, which are the basis of Plaintiffs' causes of action.  According to Local

Rule CV-26 of the Eastern District of Texas Rules, entitled "Provisions Governing Discovery;

Duty of Disclosure," discovery encompasses matters:

> (d)     Relevant to Any Party's Claim or Defense.  The following observations are
> provided for counsel's guidance in evaluating whether a particular piece of
> information is relevant to any party's claim or defense:
>
>> (1)     it includes information that would not support the disclosing
>> parties' contentions;
>>
>> (2)     it includes those persons who, if their potential testimony
>> were known, might reasonably be expected to be deposed or
>> called as a witness by any of the parties;
>>
>> (3)     it is information that is likely to have an influence on or
>> affect the outcome of a claim or defense;
>>
>> (4)     it is information that deserves to be considered in the
>> preparation, evaluation, or trial of a claim or defense; and
>>
>> (5)     it is information that reasonable and competent counsel
>> would consider reasonably necessary to prepare, evaluate,
>> or try a claim or defense.

E.D. Tex. Civ. R. 26(d).  The court is not persuaded by Plaintiffs' reasoning that obtaining the

2008 Seismic Data is relevant to establishing Plaintiffs' causes of actions—breach of contract,

fraudulent inducement, and conversion.  Plaintiffs specifically maintain that the 2008 Seismic Data

are necessary to prove the falsity of Samson's representation underlying their fraudulent inducement claim.  To prove a claim for fraudulent inducement, Plaintiffs must establish the following elements:

> 1) a material misrepresentation was made; 2) when the misrepresentation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; 3) the speaker made the misrepresentation with the intent that the other party should act on it; and 4) the plaintiff detrimentally relied on the misrepresentation.

*Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 545 (5th Cir. 2003).  The elements of fraudulent inducement emphasize the making of a *misrepresentation* to induce a party to take certain action, not the contents of underlying data or documents which are the subject of the claim.[2]  Here, the misrepresentation Plaintiffs allege is that Samson would provide seismic and geographical data

---

[2] As to their cause of action for fraudulent inducement, Plaintiffs allege the following in their Amended Complaint:

> Defendant has acknowledged that it possesses or did possess seismic and geological data concerning Plaintiffs' property.  Defendant, however, is now claiming that the data was obtained PRIOR to the Lease and, therefore, Defendant was not required to provide it to Plaintiffs.  If true, Defendant is essentially admitting that it fraudulently induced Plaintiffs to sign the Lease.  More specifically, Defendant had the data, knew the data was important to Plaintiffs, and "agreed" to provide the data to Plaintiffs, knowing it was necessary to get the Lease, knowing all the while it had no intention of producing the data.

> Accordingly, Plaintiffs bring a cause of action against Defendant for fraudulent inducement.  In this regard, Plaintiffs allege that:

>> (a) Defendant made a misrepresentation to Plaintiffs - that Defendant would provide seismic and geological data concerning Plaintiff[s]' property to Plaintiffs;
>> (b) the representation was material;
>> (c) the representation was false;
>> (d) when Defendant made the representation, it knew the representation was false, or made the representation recklessly, as a positive assertion, and without knowledge of its truth;
>> (e) Defendant made the representation with the intent that Plaintiffs act on it;
>> (f) Plaintiffs relied on the representation; and
>> (g) the representation caused Plaintiffs economic injury.

concerning Plaintiffs' property to Plaintiffs, including the 2008 Seismic Data, to induce them to enter into the 2012 Leases.  Actually securing the 2008 Seismic Data, however, does not affect Plaintiffs' case or causes of actions.[3]  Moreover, the court finds Samson has adequately supported its objections, given that there is no reasonable probability that the contents of the data Plaintiffs seek could render their breach of contract, fraudulent inducement, or conversion claims more or less viable.  Thus, Defendant shows that the requested 2008 Seismic Data are irrelevant and disproportional to the needs of Plaintiffs' case, which concerns only the 2012 Leases.

The court finds that Plaintiffs, by targeting the 2008 Seismic Data in their requests for production, are misusing the discovery process to obtain information to which they do not appear to be entitled.  Notably, at the time Plaintiffs and Samson entered into the 2012 Leases, Plaintiffs were aware that the 2008 Seismic Data existed, yet there is no indication that they specifically requested such data from Samson, and there is no reference to such data included in the leases. Instead, as set forth in the Amended Complaint, Section XV of the 2012 Leases entitled "Information" provides:

> In addition, Lessee shall furnish to Lessor the following seismic or other geophysical data (collectively "data") collected by Lessee during the term of this Lease on the leased premises as depicted on the attached Exhibit "B":  (1) access to all basic data generated (including tapes); (2) scaled, platted maps for all geophysical surveys performed showing the location of all shot holes and station points used in each survey and (3) final stacked and migrated seismic data at all depths across the leased premises.  Lessor agrees to use reasonable efforts during the term of this Lease to maintain all such data so provided in confidence until otherwise released from this obligation by Lessee or until Lessee releases such data to the general oil and gas industry, whichever occurs earlier.  Said data shall be

---

[3] By analogy, if Plaintiffs claimed that Samson promised to provide them a patent owned by Samson if they would enter into the 2012 Leases, but had no intention of ever providing the patent, Samson would not be required to produce the patent or its underlying data in order for Plaintiffs to be able to prove the falsity of the representation.

delivered to Lessor no later than ninety days from the receipt of the final processed data by Lessee.  All such information shall be provided by Lessee irrespective of the results of Lessee's operations on the herein described land.

It is undisputed that the 2008 Seismic Data were not collected during the term of the 2012 Leases. As a consequence, the court will not allow a party to "bootstrap" the discovery process to obtain the desired fruits of litigation through an overly broad discovery request.

Plaintiffs' requests also concern Samson's interpretations, anomalies, general accounting, sale, use, and various associated valuations of the 2008 Seismic Data.  The court finds that these requests are not temporally relevant to the 2012 Leases at issue in this case.  In 2011, in conjunction with a larger transaction, a valuation was performed on all of Samson's proprietary seismic data within Samson's Gulf Coast Division ("2011 Valuation").  The 2011 Valuation assigned value to the entire Willow Marsh Survey, as well as to other surveys.  Plaintiffs are not entitled to this information because it was not collected during the 2012 Leases and the valuation did not place a value on Samson's holdings as they pertained specifically to Plaintiffs' property. Furthermore, it would be unduly burdensome to require Samson to attempt to segregate any data to isolate valuations that relate only to Plaintiffs' property.

Additionally, Samson no longer has the legal right to produce the 2008 Seismic Data because the data were sold to a third party.  The court agrees that obtaining the 2008 Seismic Data would pose a burden that "outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).  Alternatively, to the extent that Samson has a copy of the 2008 Seismic Data, the copy of the 2008 Seismic Data constitutes a trade secret.  *See In re Bass*, 113 S.W.3d 735, 740 (Tex. 2003) ("It is undisputed that the oil and gas industry typically treats seismic data . . . as trade secrets" and thus, Texas Rule of Evidence 507, entitled "Trade Secrets Privilege" applies.); *see* FED. R. EVID. 501 ("[I]n a civil

12

case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").  Under Rule 507 of the Texas Rules of Evidence:

> (a) General Rule.  A person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, unless the court finds that nondisclosure will tend to conceal fraud or otherwise work injustice.
>
> (b) Who May Claim.  The privilege may be claimed by the person who owns the trade secret or the person's agent or employee.
>
> (c) Protective Measure.  If a court orders a person to disclose a trade secret, it must take any protective measure required by the interests of the privilege holder and the parties and to further justice.

TEX. R. EVID. 507.  Here, production of the 2008 Seismic Data, viewed as a trade secret in Texas, is not necessary for a fair adjudication of Plaintiffs' claims.  "Necessity depends on whether the trade secret's production is 'material and necessary to the litigation.'"  *In re Bass*, 113 S.W.3d at 740 (quoting *Automatic Drilling Mach., Inc. v. Miller*, 515 S.W.2d 256, 259 (Tex. 1974).  As mentioned above, the production of the 2008 Seismic Data is not material or necessary to Plaintiffs' causes of actions and will not affect their ability to prove their claims.

Accordingly, the court finds that Plaintiffs' request that Samson produce documentation pertaining to the 2008 Seismic Data is overly broad, burdensome, and unrelated to the 2012 Leases, which are at issue in this litigation.  Samson's objections to Plaintiffs' requests 1, 2, 3, 4, 5, 6, 7, and 18, are sustained.

IV.  Conclusion

Consistent with the foregoing analysis, Plaintiffs' Motion to Overrule Objections and Motion to Compel Responses to Requests for Production (#15) is DENIED.

SIGNED at Beaumont, Texas, this 21st day of August, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE